**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
(Alexandria Division)

|  |  |
|---|---|
| HANOVER INSURANCE COMPANY and THE HANOVER AMERICAN INSURANCE COMPANY<br><br>*Plaintiffs*<br><br>v.<br><br>C. DAVID VENTURE MANAGEMENT, LLC, VENTURE STREET, LLC, GREAT AMERICAN INSURANCE COMPANY,<br><br>*Defendants* | Civil Action No.: 21-00790 |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiffs, Hanover Insurance Company and The Hanover American Insurance Company (collectively "Hanover"), by and through their undersigned counsel, files this Complaint for Declaratory Judgment and states:

### NATURE OF ACTION

1. Hanover seeks a declaration, pursuant to 28 U.S.C. §2201, that it owes no duty to defend or indemnify C. David Venture Management, LLC and Venture Street, LLC in the putative class action lawsuit styled *In Re HomeAdvisor, Inc. Litigation*, Civil Action No. 16-CV-01849, in the United States District Court for the District of Colorado (the "HomeAdvisor Lawsuit").

## PARTIES

2. Hanover Insurance Company is a corporation organized and existing under the laws of New Hampshire, with its principal place of business located in Worcester, Massachusetts.

3. The Hanover American Insurance Company is a corporation organized under the laws of New Hampshire, with its principal place of business in Worcester, Massachusetts.

4. C. David Venture Management, LLC ("CDVM") is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at 6809 Lemon Road, McLean, Virginia. Upon information and belief, none of CDVM's members are citizens of New Hampshire or Massachusetts.

5. Venture Street, LLC ("VentureStreet") is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at 6809 Lemon Road, McLean, Virginia. Upon information and belief, none of VentureStreet's members are citizens of New Hampshire or Massachusetts.

6. Great American Insurance Company ("Great American") is a corporation organized and existing under the laws of Ohio, with its principal place of business at 301 E. Fourth Street, Cincinnati, Ohio 45202.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that the insurance policies at issue in this action were issued in this District.

## THE HOMEADVISOR LAWSUIT

9. HomeAdvisor, Inc. ("HomeAdvisor") is an online marketplace that connects home service professionals ("HSPs") with homeowners in need of services.

10. Plaintiffs in the HomeAdvisor Lawsuit ("Class Plaintiffs") are HSPs who paid for memberships with HomeAdvisor.

11. Class Plaintiffs filed the HomeAdvisor Lawsuit on or about July 16, 2019. The operative pleading is the Consolidated Second Amended Class Action Complaint (the "Complaint"), which was filed on February 22, 2021. A redacted copy of the Complaint is attached hereto as Exhibit 1.

12. Class Plaintiffs allege that in addition to their membership fees, they pay a fee for each service request or "lead" they get from HomeAdvisor.

13. Class Plaintiffs allege that HomeAdvisor contracts with lead generator companies, including CDVM and VentureStreet, to generate some of the leads it sells to HSPs.

14. According to Class Plaintiffs, CDVM and VentureStreet receive 55% of the revenue that HomeAdvisor generates from the leads CDVM and VentureStreet generate through websites they own and operate.

15. Class Plaintiffs allege that HomeAdvisor fails to exercise any quality control over the leads, many of which are bogus because, among other reasons, they are comprised of "wrong or disconnected phone numbers," "wrong contact information," "persons who never even heard of HomeAdvisor" or "are not even homeowners," "stale leads," "[l]eads that are over

distributed," or "contacts for homes that were listed for sale" or "vacant or non-existent residences."

16. Class Plaintiffs allege that CDVM and VentureStreet were aware that robots were generating fake leads through their websites, but failed to include a CAPTCHA (a program used to distinguish human from machine input) to prevent such abuse.

17. The Second Amended Complaint raises 57 causes of action, two of which are against CDVM and VentureStreet: Count I – Racketeer Influenced and Corrupt Organizations Act ("RICO") violations and Count IV – Unjust Enrichment.

18. The Court in the HomeAdvisor Lawsuit dismissed the RICO claim with prejudice as to all defendants.

19. In Count IV, Class Plaintiffs allege that CDVM and VentureStreet knew the HSPs "were not receiving services or Leads of the quality, nature, fitness, or value that had been represented by HomeAdvisor, and that a reasonable consumer would expect, and "have been unjustly enriched by their fraudulent and deceptive conduct and withholding of benefits."

## THE GREAT AMERICAN POLICY

20. Upon information and belief, Great American provided directors and officers liability coverage to VentureStreet during the relevant period.

21. Upon information and belief, Great American is defending VentureStreet in the HomeAdvisor Lawsuit pursuant to a reservation of rights.

## THE HANOVER POLICIES

22. Hanover issued Commercial General Liability Policy Nos. ZZ6 D448104 00, effective December 9, 2017 to December 9, 2018, ZZ6 D448104 01, effective December 9, 2018 to December 9, 2019, ZZR D448104 03, effective December 9, 2019 to January 16, 2020, ZZR

D448104 04, effective January 16, 2020 to January 16, 2021, and ZHR D448104 05, effective January 16, 2021 to January 16, 2022, to CDVM (the "CGL Policies").  The CGL Declarations are attached as Exhibits 2, 3, 4, 5 and 6, respectively.

23. Hanover issued Commercial Follow Form Excess and Umbrella Policy Nos. UH6 D448105 00, effective December 9, 2017 to December 9, 2018, UH6 D448105 01, effective December 9, 2018 to December 9, 2019, UHR D448105 03, effective December 9, 2019 to January 16, 2021, UHR D448105 04, effective January 16, 2020 to January 16, 2021, and UHR D448105 05, effective January 16, 2021 to January 16, 2022, to CDVM (the "Excess/Umbrella Policies").  The Excess/Umbrella Declarations are attached as Exhibits 7, 8, 9, 10 and 11, respectively.

24. VentureStreet was added as an additional named insured on the CGL and Excess/Umbrella Policy effective May 29, 2019.

25. The CGL Policies contain Commercial General Liability Coverage Form CG 00 01 04/13 ("CGL").  A copy of the CGL is attached hereto as Exhibit 12.

26. The Insuring Agreement for Coverage A – Bodily Injury and Property Damage Liability provides, in pertinent part:

> **SECTION I – COVERAGES**
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result….
> \*\*\*

5

> **b.** This insurance applies to "bodily injury" and "property damage" only if:
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> **(2)** The "bodily injury" or "property damage" occurs during the policy period; …

27. The CGL contains the following pertinent exclusions applicable to Coverage A - Bodily Injury and Property Damage Liability:

> **2. Exclusions**
> This insurance does not apply to:
> **a. Expected Or Intended Injury**
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

28. The Insuring Agreement for Coverage B – Personal and Advertising Injury Liability provides, in pertinent part:

> **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**
> **1. Insuring Agreement**
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result….

29. The CGL contains the following pertinent exclusions applicable to Coverage B – Personal and Advertising Injury Liability:

> **2. Exclusions**
> This insurance does not apply to:
> **a. Knowing Violation Of Rights Of Another**
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and

6

advertising injury".

\*\*\*

### i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

### j. Insureds In Media And Internet Type Businesses

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

30. The CGL contains the following pertinent definitions:

### SECTION V – DEFINITIONS

\*\*\*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

7

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;
**b.** Malicious prosecution;
**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;
**f.** The use of another's advertising idea in your "advertisement"; or
**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\*\*\*

**17.** "Property damage" means:
**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. For the purposes of this insurance, electronic data is not tangible property.

31. CGL Policy Nos. ZZR D448104 03, ZZR D448104 04 and ZHR D448104 05 contain a Personal and Advertising Injury exclusion endorsement, form CG 21 38 11 85, which provides:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
**EXCLUSION – PERSONAL AND ADVERTISING INJURY**
This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART.
COVERAGE B (Section I) does not apply and none of the references to it in the Coverage Part apply.

A copy of the Personal and Advertising Injury Exclusion endorsement is attached hereto as Exhibit 13.

32. The Excess/Umbrella Policy No. UH6 D448105 contains Commercial Follow Form Excess and Umbrella form 475-001 12 14 ("Excess/Umbrella"), a copy of which is attached as Exhibit 14. The remaining Excess/Umbrella Policies contain form 475-001 01 18, a copy of which is attached as Exhibit 15.

33. The Insuring Agreement for Coverage A – Follow Form Excess Liability provides, in pertinent part:

> **1. Coverage A – Follow Form Excess Liability Insuring Agreement**
> **a.** We will pay on behalf of the insured those sums in excess of the "underlying insurance" which the insured becomes legally obligated to pay as damages, provided:
> **(1)** Such damages are covered by "underlying insurance";
> **(2)** The event which triggers coverage on the "underlying insurance" takes place during the policy period of this insurance, and
> **(3)** The applicable Limit of Insurance of the "underlying insurance" is exhausted by payment of judgments, settlements, related costs or expenses for damages also covered under this policy. We will not pay if the Limit of Insurance of "underlying insurance" is exhausted by payment for damages to which this insurance does not also apply.
> **b.** We will not pay damages that the "underlying insurance" does not pay for any reason other than exhaustion of limits of the "underlying insurance" by payment of judgments, settlements, related costs or expenses.
> **c.** The terms and conditions of the "underlying insurance" in effect at the inception of this policy apply unless they are inconsistent with the terms and conditions of this policy.

34. The Insuring Agreement of Coverage B – Umbrella Liability provides, in pertinent part:

> **2. Coverage B – Umbrella Liability Insuring Agreement**
> **a.** We will pay on behalf of the insured those sums in excess of the "retained limit" shown in the Declarations which the insured becomes

9

legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" and "advertising injury" to which this coverage applies, provided:
**(1)** The:
**(a)** "Bodily injury" or "property damage" is caused by an "occurrence"; or
**(b)** "Personal injury" and "advertising injury" is caused by an offense arising out of your business;
Which took place within the coverage territory as described in section **IV. COVERAGE TERRITORY**;
**(2)** The "bodily injury" or "property damage" occurs during the policy period, and the offense causing "personal injury" or "advertising injury" is first committed during our policy period; and
**(3)** Prior to the policy period, no insured and no "employee" authorized by you to give or receive notice of an "occurrence", offense or claim, knew
that the "bodily injury", "property damage", "personal injury" or "advertising injury" had occurred, in whole or in part….

35. The Excess/Umbrella contains the following pertinent exclusions:

> **3.** Applicable to **Coverage B – Umbrella Liability** only:
> This insurance does not apply to:
>
> \*\*\*
>
> **f. Expected or Intended Injury**
> "Bodily injury", "property damage", "personal injury" or "advertising injury" expected or intended from the standpoint
> of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
> \*\*\*
>
> **i. "Personal Injury" and "Advertising Injury"**
> Any liability or expense for "personal injury" and "advertising injury":
> \*\*\*
> **(9)** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not
> include the use of another's advertising idea in your "advertisement". However, this exclusion does not
> apply to infringement, in your "advertisement" of copyright or slogan.

10

      **(10)** Arising out of:
      \*\*\*
      **(c)** The controlling, facilitating or providing, or failing to control, facilitate or provide, access to the internet or another's internet site; …

36.    The Excess/Umbrella contains the following pertinent definitions:

      **IX. DEFINITIONS**
      Applicable to Both **Coverage A – Follow Form Excess Liability** and **Coverage B – Umbrella**
      \*\*\*
      **2. "Advertising Injury"** means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
      **a.** The use of another's advertising idea in your "advertisement"; or
      **b.** Infringing upon another's copyright or slogan in your "advertisement".
      \*\*\*

      **13. "Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

      \*\*\*

      **15. "Personal Injury"** means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
      **a.** False arrest, detention or imprisonment;
      **b.** Malicious prosecution;
      **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
      **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
      **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

      \*\*\*
      **18. "Property Damage"** means:
      **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
      **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the

"occurrence" that caused it.

37.     Excess/Umbrella Policy Nos. UH6 D448105 03, UH6 D448105 04 and UH6 D448105 05 contain a Personal Injury exclusion endorsement, form 475-0025 12 14, which provides:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
> **EXCLUSION – PERSONAL INJURY**
> **(COVERAGE A AND B)**
> This endorsement modifies insurance provided under the following:
> HANOVER COMMERCIAL FOLLOW FORM EXCESS AND UMBRELLA POLICY
> The following is added to section **VII. EXCLUSIONS**, paragraph **1.** Applicable to Both **Coverage A – Follow Form Excess Liability** and **Coverage B – Umbrella Liability**:
> This insurance does not apply to:
> **Personal Injury**
> Any liability or expense arising from "personal injury".
>
> ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

A copy of the Personal Injury exclusion endorsement is attached as Exhibit 16.

38.     Excess/Umbrella Policy Nos. UH6 D448105 03, UH6 D448105 04 and UH6 D448105 05 contain an Advertising Injury exclusion endorsement, form 475-0308 12 14, which provides:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
> **EXCLUSION – ADVERTISING INJURY**
> **(COVERAGE A AND B)**
> This endorsement modifies insurance provided under the following:
> HANOVER COMMERCIAL FOLLOW FORM EXCESS AND UMBRELLA POLICY
> The following is added to Section **VII. EXCLUSIONS,** paragraph **1.** Applicable to Both **Coverage A – Follow Form Excess Liability** and **Coverage B – Umbrella Liability** only:
> This insurance does not apply to:

**Advertising Injury**
Any liability or expense arising out of "advertising injury".
ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS
REMAIN UNCHANGED.

A copy of the Advertising Injury exclusion endorsement is attached as Exhibit 17.

## COUNT I
## DECLARATORY JUDGMENT

39. Hanover incorporates by reference the allegations in paragraphs 1 through 38 as if set forth fully herein.

40. CDVM and VentureStreet tendered the HomeAdvisor Lawsuit to Hanover requesting a defense and indemnification.

41. There is no coverage available for the claims asserted against CDVM and VentureStreet in the HomeAdvisor Lawsuit because, among other reasons:

a. The claims do not allege damages because of "bodily injury" or "property damage" caused by an "occurrence" within the meaning of the CGL or Excess/Umbrella Policies;

b. The claims do not allege damages because of "personal and advertising injury" within the meaning of the CGL Policies;

c. The claims do not allege damages because of "advertising injury" or "personal injury" within the meaning of the Excess/Umbrella Policies;

d. The alleged acts were not committed during the applicable policy periods;

e. The alleged injuries did not occur during the applicable policy periods; and

     f. Several exclusions apply to preclude coverage including, but not limited to the exclusions for: Expected or Intended Injury; Knowing Violation of the Rights of Another; Infringement of Copyright, Patent, Trademark or Trade Secret; Insureds In Media And Internet Type Businesses; and Personal and Advertising Injury.

  42. Accordingly, Hanover owes no obligation to defend or indemnify CDVM or VentureStreet in the HomeAdvisor Lawsuit.

  43. An actual controversy exists among the parties to this litigation concerning the parties' rights, duties and obligations under the Hanover Policies with respect to the HomeAdvisor Lawsuit.

  44. A declaratory judgment is necessary to resolve the dispute and end the uncertainties among the parties to this litigation concerning their rights, duties and obligations under the Policies.

  WHEREFORE, Hanover prays that this Court enter judgment in its favor, decide, adjudge and declare that Hanover has no duty to defend or indemnify CDVM or VentureStreet

against the claims in the HomeAdvisor Lawsuit and grant whatever other relief it deems appropriate and necessary.

Respectfully submitted,

*Margaret Fonshell Ward*
Margaret Fonshell Ward (VSB #94295)
DOWNS WARD BENDER HAUPTMANN & HERZOG, P.A.
Executive Plaza III, Suite 400
11350 McCormick Road
Hunt Valley, MD 21031
(410) 584-2800
mward@downs-ward.com

*Attorneys for Plaintiffs The Hanover American Insurance Company and Hanover Insurance Company*