IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

HANOVER INSURANCE COMPANY,      )
*et al.*,                                               )
                                                           )
              Plaintiffs,                            )
                                                           )
       v.                                                )          Civil Action No. 1:21-cv-790 (RDA/JFA)
                                                           )
C. DAVID VENTURE MANAGEMENT,   )
LLC, *et al.*,                                      )
                                                           )
              Defendants.                         )

**MEMORANDUM OPINION AND ORDER**

       This matter comes before the Court on Defendants C. David Venture Management, LLC
and Venture Street, LLC's ("Defendants") Motion to Dismiss. Dkt. 6. This Court has dispensed
with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civ.
R. 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion
together with Defendants' Memorandum in Support (Dkt. 6-1); Plaintiffs Hanover Insurance
Company and The Hanover American Insurance Company's ("Plaintiffs" or "Hanover")
Opposition (Dkt. 14); and Defendants' Reply (Dkt. 16), it is hereby ORDERED that Defendants'
Motion to Dismiss (Dkt. 6) is GRANTED.

I. BACKGROUND

       Plaintiffs in this action are Hanover Insurance Company and The Hanover American
Insurance Company, both organized under the laws of New Hampshire and both with a principal
place of business in Worcester, Massachusetts. Dkt. 1 ¶¶ 2-3.[1] Defendants are C. David Venture
Management, LLC ("CDVM") and Venture Street, LLC. *Id.* ¶¶ 4-5. CDVM is organized under

---

[1] The Court jointly references the two corporations as Hanover.

the laws of Delaware with a principal place of business in McLean, Virginia. *Id.* ¶ 4. Venture Street, LLC is also organized under the laws of Delaware with a principal place of business in McLean Virginia; its members are citizens of New Hampshire and Massachusetts. *Id.* ¶ 5. This lawsuit arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and implicates Hanover's potential duties to defend or indemnify Defendants in a putative class action brought in the U.S. District Court for the District of Colorado.

Beginning on December 9, 2017, Hanover issued the first of several Commercial General Liability ("CGL") policies to CDVM. *Id.* ¶ 22. Hanover also issued Commercial Follow Form Excess and Umbrella Policies ("Excess/Umbrella Policy") for the same effective dates. *Id.* ¶ 23. Defendant Venture Street was added as an additional named insured on the CGL and Excess/Umbrella Policy effective May 29, 2019. *Id.* ¶ 24.

Plaintiffs in the putative class action, styled *In Re HomeAdvisor, Inc. Litigation*, Civil Action No. 16-CV01849 ("the HomeAdvisor lawsuit"), filed suit on July 16, 2019. *Id.* ¶ 11. The plaintiffs in the HomeAdvisor lawsuit have amended their complaint several times and continue to assert claims against Defendants CDVM and Venture Street. *Id.* ¶¶ 17-19. After Defendants were named in the HomeAdvisor lawsuit, they provided notice of the litigation to Plaintiff Hanover. On November 12, 2019, Hanover responded to the notice by denying Defendants insurance coverage for the HomeAdvisor Lawsuit. *See* Dkt. 6-2 ¶ 4; Dkt. 14 at 2. Defendants sought reconsideration from Hanover on January 29, 2020, and again on April 23, 2021, but Hanover reaffirmed its coverage denial. Dkt. 6-2 ¶¶ 5-7; Dkt. 14 at 2.

This lawsuit followed. Plaintiffs filed suit on July 6, 2021, seeking a declaration that they owe no duty to defend or indemnify Defendants in the HomeAdvisor Lawsuit. Plaintiffs maintain that "[t]here is no coverage available for the claims asserted against [Defendants] CDVM and

2

VentureStreet in the HomeAdvisor Lawsuit" for multiple reasons.  Dkt. 1 ¶ 41.  Specifically, Plaintiffs allege that insurance coverage is unavailable because (1) "[t]he claims do not allege damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' within the meaning of the CGL or Excess/Umbrella Policies"; (2) "[t]he claims do not allege damages because of 'personal and advertising injury' within the meaning of the CGL Policies"; (3) "[t]he claims do not allege damages because of 'advertising injury' or 'personal injury' within the meaning of the Excess/Umbrella Policies"; (4) the alleged acts were not committed, and the alleged injuries did not occur, during the relevant policy periods; and (5) several exclusions bar coverage, including exclusions for "Expected or Intended Injury Knowing Violation of the Rights of Another; Infringement of Copyright, Patent, Trademark or Trade Secret; Insureds In Media And Internet Type Businesses; and Personal and Advertising Injury."  *Id.*

After Plaintiffs filed this lawsuit, Plaintiffs and Defendants attempted to reach a written agreement regarding the status of Defendants' claim for insurance coverage for the HomeAdvisor lawsuit and its effect on this action.  Although the parties were unable to successfully negotiate specific terms in the written agreement, Defendants notified Plaintiffs that they were no longer seeking coverage from Plaintiffs for the HomeAdvisor lawsuit on July 19, 2021.[2]  On August 16, 2021, Defendants affirmed that they had withdrawn their request for coverage from Hanover. Through counsel, Defendants communicated the details of their withdrawal to Plaintiffs:

> [M]y clients have withdrawn their request for coverage to Hanover and are not seeking coverage from Hanover. My clients will not seek to revisit coverage unless there is a future amendment to the underlying complaint. In the event of a future amendment to the underlying complaint, my clients will assess coverage and will only be seeking coverage (if at all) starting with that amendment for amounts incurred after the amendment. My clients will not be seeking coverage for amounts prior to the amendment.

---

[2] Plaintiffs succeeded in reaching a stipulation with Defendant Great American Insurance Company, which is no longer a party to this action following the Court's dismissal without prejudice of Plaintiffs' claims against Defendant Great American.  *See* Dkt. 10.

Dkt. 6-2 ¶ 14.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action if the Court lacks subject matter jurisdiction over a defendant. Defendants can challenge subject matter jurisdiction through a facial challenge to the complaint or a factual challenge to the allegations therein. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). A facial challenge argues that the complaint fails to allege facts sufficient to support a finding that a court has subject matter jurisdiction. *Id.* Thus, if the Rule 12(b)(1) motion is a facial challenge, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). That is, the factual allegations of the complaint are treated as true. *Id.* By contrast, a factual challenge argues that the "jurisdictional allegations of the complaint" are not true. *Id.* (quoting *Adams*, 697 F.2d at 1219). Accordingly, in a factual challenge, there is no presumption that the facts in the complaint are true. *Id.* A party moving for dismissal for lack of subject matter jurisdiction should prevail only if material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## III. ANALYSIS

### A. Ripeness and Declaratory Relief

The Declaratory Judgment Act authorizes federal courts to review claims for declaratory relief. The animating purpose of a declaratory judgment remedy is to "guide parties in their future conduct in relation to each other, thereby relieving them from the risk of taking undirected action incident to their rights." *Seneca Ins. Co. v. Shipping Boxes I, LLC*, 30 F. Supp. 3d 506, 511 (E.D.

Va. 2014) (quoting *Charlottesville Area Fitness Club Operators Ass'n v. Albemarle Cty. Bd. of Sup'rs*, 285 Va. 87, 99 (2013)).

The doctrine of standing is grounded in the Constitution's limits on the Article III judicial power. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (observing that a litigant's request to adjudicate a claim on prudential grounds "is in some tension with our recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging") (internal quotation marks and citations omitted). Under Article III, the "judicial Power shall extend to all Cases [and] Controversies." U.S. Const. art. III, § 2, cl. 1. This limitation is a vital one, as "no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "Ripeness, another justiciability doctrine, determines when a case or controversy is fit for federal judicial review." *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 199 (4th Cir. 2019). "[I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967)).

Under the Declaratory Judgment Act, a district court, in "a case of actual controversy within its jurisdiction . . . *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). The statutory text therefore reveals that a federal court's decision to hear a declaratory judgment action is partly discretionary. *See Abbott Lab'ys*, 387 U.S. at 148; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-88 (1995). The Supreme Court has explained that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of

practicality and judicial administration." *Id.* at 288.  This feature gives ripeness doctrine, which like standing traces its roots to Article III's case-or-controversy requirement, a prudential dimension.[3]  Although "[t]he ripeness doctrine tends not to 'involve rigid formulas that can be applied with precision and definiteness,'" *Fourth Q. Props. IV, Inc. v. City of Concord, N.C.*, 127 F. App'x 648, 651 (4th Cir. 2005) (internal citation omitted), a central feature of the ripeness inquiry involves asking whether the claim for relief remains purely conjectural.  "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)).

For this reason, "[a]n important factor in considering ripeness is whether resolution of the tendered issue is based upon events or determinations which may not occur as anticipated."  *A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Co.*, 559 F.2d 928, 932 (4th Cir. 1977) (citing 13 Wright, Miller & Cooper, Federal Practice and Procedure § 3532 (1975)).  A declaratory claim is only ripe for judicial resolution when the "facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *Helco Prods. Co. v. McNutt*, 137 F.2d 681, 682 (D.C. Cir. 1943).  When a court determines whether it should exercise its discretion to hear a declaratory judgment action, its analysis is "informed by the teachings and experience [of the courts] concerning the functions and extent of federal judicial power."  *Wilton*, 515 U.S. at 286.

---

[3] "Unlike standing, however, it is difficult to draw a clear line between the constitutional and prudential dimensions of ripeness, so the doctrine is best analyzed as a whole."  Michael Aaron DelGaudio, *From Ripe to Rotten: An Examination of the Continued Utility of the Ripeness Doctrine in Light of the Modern Standing Doctrine*, 50 GA. L. REV. 625, 641 (2016).

B. Plaintiffs' Claim for Declaratory Relief

Plaintiffs' Complaint seeks a declaration that Hanover owes no duty to defend or indemnify Defendants in the HomeAdvisor lawsuit.   On July 19, 2021, however, Defendants notified Plaintiffs that they were withdrawing their claim for insurance coverage related to the HomeAdvisor lawsuit.   Dkt. 6-2 ¶ 9.   Defendants reiterated their withdrawal for coverage under the operative CGL policies on August 16, 2021.  *Id.* ¶ 14.   The question before the Court is whether, on these facts, Plaintiffs' claim for declaratory relief is ripe for adjudication.

Plaintiffs' declaratory judgment claim seeks both a judicial declaration that they owe no duty to defend or indemnify Defendants in the HomeAdvisor lawsuit.   Although the two requests for relief are related, they are not identical, and a court may issue a declaratory judgment as to a duty to defend under an insurance contract while declining to rule on a duty to indemnify in a declaratory judgment action.  *See Collins*, 942 F.3d at 200 (comparing *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583-85 (7th Cir. 2003), with *Med. Assurance Co. v. Hellman*, 610 F.3d 371, 381-82 (7th Cir. 2010)).   The reason for this distinction turns on parties' substantial interest in knowing—at the outset of litigation—whether an insurer is contractually obligated to defend its policyholder against a lawsuit naming the insured as a defendant.   Therefore, a declaratory judgment claim seeking clarity regarding a duty to defend may be ripe for resolution where a claim seeking declaratory judgment on a duty to indemnify is not.  *See Collins*, 942 F.3d at 200 ("[W]e distinguished duty-to-defend cases that addressed who was required to pay the costs of defending a suit prior to judgment." (citing *Tidewater Const. Co.*, 559 F.3d at 932 and *Ellett Bros. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388-89 (4th Cir. 2001)).   As the Fourth Circuit explained in *Collins*, "suits about the duty to indemnify—unlike the duty-to-defend suits—would ordinarily be advisory when the insured's liability remains undetermined."  942 F.3d at 200.

7

The facts of this case do not call for declaratory relief on either the duty to defend or duty to indemnify questions.  Critically, Defendants no longer seek coverage under the relevant insurance policies for defending against the HomeAdvisor lawsuit.  As a result, there is not a live question regarding Plaintiffs' duty to defend Defendants in that litigation.  Plaintiffs assert that Defendants' motion to dismiss should be denied, in spite of the fact Defendants have withdrawn their request for coverage.  In support of their argument, Plaintiffs contend that a chain of events could precipitate a live dispute over their duty to defend Defendants under the relevant CGL policies, thereby making a judicial declaration on that question ripe for resolution now.  Those potential future events are (1) a future amendment of the HomeAdvisor Lawsuit; (2) a determination by Defendants that a future amended complaint in that litigation alleges a potentially covered claim; (3) Defendants' filing of a request for coverage from Plaintiffs; and (4) a denial of coverage by Plaintiffs.

Plaintiffs' alleged injury "is of a hypothetical and contingent nature: the injury may or may not occur[.]"  *Collins*, 942 F.3d at 200.  If Plaintiffs do not deny Defendants coverage in defending against a potential future amended complaint in the HomeAdvisor lawsuit  Defendants—or if Defendants never again seek such coverage—then a decision from this Court concerning Plaintiffs' duty to defend will have no effect.  Were the Court to interpret the relevant CGL and Excess/Umbrella policies' language regarding a duty to defend at this juncture, such a ruling would be premature and therefore tantamount to an advisory opinion in contravention of Article III.

Similarly, Plaintiffs' duty to indemnify Defendants under the relevant CGL policies is not ripe for resolution.  Whether Defendants should be indemnified by Plaintiffs against liability for injuries "would depend in the first place upon whether [Defendants] are found to be liable for the" conduct alleged in the HomeAdvisor lawsuit, but "[that question cannot be answered at this time."

*Tidewater Const. Co.*, 559 F.2d at 933.  Thus, this Court cannot at this time exercise its prerogative under 28 U.S.C. § 2201 to issue a declaratory judgment on the indemnity question.

When a case is not ripe for resolution, the court lacks subject-matter jurisdiction over the action.  "As set forth in Rule 12(h)(3) of the Federal Rules of Civil Procedure, '[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.'" *Keeler v. City of Hampton, Inc.*, No. 4:15-cv-76, 2015 WL 13065191, at *4 (E.D. Va. Oct. 9, 2015) (quoting Fed. R. Civ. P. 12(h)(3)).  Accordingly, the Court must dismiss the Complaint, albeit without prejudice and with leave to amend if the contingencies identified above come to pass.

### C. Defendants' Request for Attorneys' Fees

Defendants also seek fees related to filing their motion to dismiss.  "[F]ederal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require." *Hall v. Cole*, 412 U.S. 1, 4-5, (1973).  In such scenarios, "a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 5 (quoting J. Moore, Federal Practice 54.77(2), at 1709 (2d ed. 1972)).  In assessing whether attorneys' fees are warranted, this Court remains mindful of the difference between vexatious lawsuits and those that, although unsuccessful, present a colorable claim for relief.  This case falls into the latter camp.  Although Plaintiffs have failed to secure the relief they sought in their Complaint, this Court is unpersuaded that they acted in bad faith, wantonly, or for other oppressive reasons, or that their decision to bring this action was an abuse of the judicial process. *Cf. Am. Sci. & Eng'g, Inc. v. Autoclear, LLC*, 606 F. Supp. 2d 617, 625, 626 (E.D. Va. 2008) (finding bad faith where a party issued "a patently misleading press release" mischaracterizing the court's rulings as "part of a deliberate pattern of deceit by Defendants throughout [the] litigation").  Consequently, the Court declines to grant Defendants attorneys' fees.

IV. CONCLUSION

For these reasons, it is hereby ORDERED that Defendants' Motion to Dismiss (Dkt. 6) is GRANTED.  Plaintiffs' Complaint is DISMISSED WITHOUT PREJUDICE.  The Court finds that amendment would not be futile and grants Plaintiffs leave to amend their Complaint consistent with this Memorandum Opinion and Order within 21 days if they choose.  *See* Fed. R. Civ. P. 15(a)(2).

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record and to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
August 30, 2022

_____ /s/ _____
Rossie D. Alston, Jr.
United States District Judge

10